*NOT FOR PUBLICATION*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| T&L CATERING, INC. | : |
| Plaintiff, | : Civil Action No. 3:20-cv-07934 (FLW) (ZNQ) |
| v. | : OPINION |
| THE HANOVER INSURANCE GROUP, INC. and CITIZENS INSURANCE COMPANY OF AMERICA, | : |
| Defendants. | : |

**WOLFSON, Chief Judge:**

Plaintiff T&L Catering, Inc. ("Plaintiff") filed this insurance coverage putative class action seeking coverage from Defendants the Hanover Insurance Group, Inc. ("Hanover")[1] and Citizens Insurance Company of America ("Citizens") (collectively, "Defendants") for losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. Before the Court is a Motion for Judgment on the Pleadings filed by Citizens pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth herein, Citizens' Motion for Judgment on the Pleadings is **GRANTED**.

**I. BACKGROUND**

Plaintiff is a catering business located in North Plainfield, New Jersey. (Compl. ¶ 14.) Citizens is a subsidiary of Hanover that is licensed to issue insurance policies in New Jersey. (*Id.* ¶ 17.) Citizens issued Policy number ZBY 8777623 09 to Plaintiff for the period of July 20, 2019

---

[1] Hanover was voluntarily dismissed without prejudice from this action by stipulation of the parties on October 22, 2020. (*See* ECF No. 11.)

1

through July 20, 2020 (the "Policy"). (*Id.* ¶ 18.) The Policy issued to Plaintiff by Citizens was an all-risk commercial property policy that covers loss or damage from all risks except those expressly excluded. (*Id.* ¶ 33.) In relevant part, the Policy provides as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or physical damage to property at the premises . . . [t]he loss or damage must be caused by or result from of a Covered Cause of Loss.

(Compl. ¶ 36.) The Policy also contains an endorsement form, titled "Exclusion of Loss Due to Virus or Bacteria," which applies to all coverages provided by the Policy (the "Virus Exclusion"). (Def.'s Mot., Ex. 2, CP 000111.) The Virus Exclusion states, "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable [of] inducing physical distress, illness or disease." (Compl. ¶ 43.)

On March 11, 2020, the World Health Organization declared COVID-19 a worldwide pandemic. (*Id.* ¶ 1.) On March 13, 2020, the federal government declared the COVID-19 pandemic to be a national emergency. (*Id.* ¶ 2.) The Center for Disease Control ("CDC") recommended safety measures such as staying home and refraining from going to public places where people gather. (*Id.*) Following the CDC recommendations, many state governments, including New Jersey, executed closure orders (the "Closure Orders") temporarily suspending in-person, non-essential business operations, including those of restaurants. (*Id.* ¶¶ 4, 5.) Plaintiff was forced to close its business, except for take-out service, in order to comply with New Jersey's Closure Orders. (*Id.* ¶ 15.) Subsequently, Plaintiff submitted a claim for business interruption losses to Citizens, but Citizens denied Plaintiff's claim. (*Id.* ¶ 44.) In response, Plaintiff, on behalf of itself and all others similarly situated, brought a class action suit against Defendants seeking (1) a declaratory judgment finding that Defendants are liable to Plaintiffs for losses incurred as a result

of the COVID-19 pandemic and the corresponding civil authority orders, and (2) damages related to the Defendants' contractual breach of numerous insurance policies of the putative class members, including Plaintiff's Policy, when Defendants failed to compensate Plaintiff and others similarly situated for their losses. (*Id.* ¶¶ 9, 10.) In its Complaint, Plaintiff alleges that it and others similarly situated suffered losses and damages because they were unable to use their insured properties as intended. (*Id.* ¶ 41.) Plaintiff also asserts that those losses and damages were proximately caused by the precautionary measures taken to prevent the spread of COVID-19, not by the COVID-19 virus itself. (*Id.* ¶ 44.)

This Motion for Judgment on the Pleadings followed. Citizens argues that (1) Plaintiff did not sustain a direct physical loss of, or damage to, its insured premises, (2) Plaintiff failed to state a claim under the civil authority provision of the Policy, and (3) the Virus Exclusion bars coverage for all losses caused by COVID-19. In its Opposition, Plaintiff argues that (1) the Virus Exclusion does not bar its claim for relief under the Policy, and (2) the language of the Policy is ambiguous and should be construed in favor of Plaintiff.

## II. STANDARD OF REVIEW

### a. Rule 12(c) Standard

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). "'A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12 (b)(6) motion.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 n.47 (3d Cir. 2016); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Spruill*

*v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards").

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). Although Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s].") (internal quotation marks omitted). "Thus, to survive a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion asserting that Plaintiff has failed to plead a claim, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim is 'plausible on its face." *Crawford v. Wheeler*, No. 18-1735, 2019 WL 3759696, *2 (D.N.J. Aug. 9, 2019) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that defendant had acted unlawfully." *Id.* When reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the

relevant pleading as true, viewed in the light most favorable to the non-moving party. *Gomez v. Toledo*, 446 U.S. 635, 636 (1980); *Mele v. FRB*, 359 F.3d 251, 253 (3d Cir. 2004). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). "The motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)). Accordingly, in order to survive a motion for judgment on the pleadings, the non-moving party's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard, like a motion to dismiss, requires the non-moving party to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft*, 556 U.S. at 678.

**b. Interpretation of Insurance Contracts Under New Jersey Law**

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law." *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010). However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts

because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151

6

N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A–1237–14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

## III. DISCUSSION

Here, because the Policy's Virus Exclusion applies to all coverage under the Policy, if I determine that the Virus Exclusion is enforceable, and applicable to Plaintiff's claim, it will dispose of the case.[2] The Court, therefore, begins with a discussion of the Virus Exclusion. Plaintiff argues that the Virus Exclusion does not apply because the Closure Orders were the

---

[2] To be clear, Citizens' remaining arguments that (1) Plaintiff did not suffer a direct physical loss of, or damage to, its insured premises, and (2) Plaintiff fails to state a claim under the civil authority provision of the Policy, need not be addressed if the Virus Exclusion applies and completely bars Plaintiff's coverage. *See Del. Valley Plumbing Supply Inc. v. Merchants Mut. Ins. Co.*, No. 20-08257, 2021 WL 567994, at *3 (D.N.J. Feb. 16, 2021) ("[I]t is unnecessary to address Defendant's first two arguments, because the Virus Exclusion clearly applies and bars coverage.").

proximate cause of Plaintiff's losses, not the COVID-19 virus. (Opp. Br., at 5.) Conversely, Citizens maintains that the Virus Exclusion bars Plaintiff's coverage under the Policy, because it excludes coverage "not only caused *by*, but also 'resulting *from*' any virus." (Moving Br., at 24.)

The Court first considers whether the Closure Orders, as opposed to the COVID-19 virus, were the proximate cause of Plaintiff's losses. The Policy's Virus Exclusion states, in relevant part:

> A. The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Def.'s Mot. Ex. 2, CP 000111.)

Where, as here, "there is a conflict as to whether, for coverage purposes, losses should be considered to be 'caused by' an excluded peril, the New Jersey courts employ the efficient proximate cause test, which is sometimes referred to as the Appleman's Rule." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 460 (App. Div. 2019). Pursuant to this rule, "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Id.* (quoting *Zurich Am. Ins. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)). Thus, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *Id.* at 460–61 (quoting *Auto Lenders Acceptance Co. v. Gentillini Ford, Inc.*, 181 N.J. 245, 257–58 (2004)). On the other hand,

a loss may also be covered where the covered cause "ends the sequence of events leading to the loss." *Flomerfelt*, 202 N.J. at 447. Ultimately, however, the pertinent question is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss. *See Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188, 191 (App. Div. 1979).

Here, Plaintiff contends that the Closure Orders proximately caused its losses, because they required all restaurant businesses to discontinue in-person service. Like numerous other courts that have confronted this issue, I disagree. Indeed, even though the Closure Orders were an immediate cause of Plaintiff's losses, they were not the predominant cause. Rather, the predominant cause of Plaintiff's losses was the COVID-19 virus because, but for the virus, the State of New Jersey would not have issued the Closure Orders. I recently addressed this exact issue in *Causeway Automotive, LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917 (D.N.J. Feb. 10, 2021). In *Causeway*, plaintiffs sued their insurance provider for coverage of losses sustained as a result of the COVID-19 pandemic and New Jersey's Closure Orders. *Id.* at *1-2. Plaintiffs argued that the Closure Orders issued by the Governor were the efficient proximate cause of their business losses since the Closure Orders were the last act in a chain of events that caused their losses. *Id.* at *6. I explained that plaintiffs' argument "erroneously focuse[d] on the sequence of events that led to the issuance of the Executive Orders, as opposed to what, in fact, was the predominant cause of their losses." *Id.* Here, Plaintiff makes the same error. Courts have repeatedly recognized that the state closure orders are inextricably tied to the COVID-19 virus, and therefore, the predominant and proximate cause of Plaintiff's business-related losses is the

COVID-19 virus, not the closure orders that were issued in response to the virus.[3] *Id*; *see also Quakerbridge Early Learning LLC v. Selective Ins. Co. of New England*, No. 20-7798, 2021 WL 1214758, at *4 (D.N.J. Mar. 31, 2021) (declining to depart from the line of opinions holding that the COVID-19 virus is the proximate cause of numerous plaintiffs' business losses, not the Closure Orders) (collecting cases); *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021) (finding plaintiff's argument that the closure orders caused its losses unavailing).

Moreover, my conclusion that the COVID-19 virus was the proximate cause of Plaintiff's losses does not change because the Virus Exclusion does not have an anti-concurrent clause. Anti-concurrent clauses are "exclusionary language designed to avoid the 'efficient proximate cause doctrine.'" *N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F.Supp.3d 74, 80 (D.N.J. 2020)) (internal quotation marks omitted); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021). Such clauses "exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or

---

[3] Plaintiff additionally argues that the issue of proximate cause is a question of fact, and as such, asserts that its allegation setting forth that its business losses were proximately caused by the state Closure Orders must be accepted as true for the purposes of this Motion. (Opp. Br. at 7.) In other words, Plaintiff contends that the Court must accept as true its allegation that "the efficient proximate cause of Plaintiffs' . . . losses were precautionary measures taken by their respective States . . . to prevent the spread of COVID-19." (Compl. ¶ 44.) However, this is the type of legal conclusion that is not entitled to an assumption of truth. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Moreover, courts in this district have treated efficient proximate cause as an issue of law. *See Quakerbridge*, 2021 WL 1214758, at *4 (collecting cases). As have courts in other jurisdictions. *See* 7 Couch on Ins. § 101:59, n.3 (citing *Principle Sols. Grp., LLC v. Ironshore Indem., Inc.*, 944 F.3d 886, 893 (11th Cir. 2019)) ("While issue of proximate cause is generally a question of fact for the jury, it may be decided as a matter of law where the evidence is clear and leads to only one reasonable conclusion"); *Bowers v. Farmers Ins. Exch.*, 991 P.2d 734, 738 (Wash. Ct. App. 2000) ("If the efficient proximate cause rule applies, the question of which peril constitutes the proximate cause is usually referred to the factfinder unless the facts are undisputed and there can be no reasonable difference of opinion regarding their meaning. In the latter case, the issue of proximate cause may be a question of law for the court.")).

sequentially, causes damage to the insured" and are enforceable under New Jersey law. *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *6 (D.N.J. Mar. 25, 2021) (quoting *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 461 (App. Div. 2019) (internal quotation marks omitted)); *see also N&S Restaurant*, 499 F.Supp.3d at 80 (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp.2d 349, 353 (D.N.J. 1999)); *Lam Investment Research, LLC v. Pub. Serv. Mutual Ins. Co.*, No. 12-5576, 2016 WL 6634931, at *5 (D.N.J. Apr. 1, 2016). In the context of COVID-19 claims for insurance coverage, courts in this District have made clear that when a plaintiff argues that closure orders caused its losses, as opposed to the COVID-19 virus, it is of minimal relevance whether a plaintiff's policy contains an anti-concurrent clause. *See Carpe Diem Spa*, 2021 WL 1153171, at *3 n.4 (stating that even when a policy does not contain an anti-concurrent clause, the analysis that the COVID-19 virus is the efficient proximate cause of a plaintiff's losses, and not the Closure Orders, remains unaffected); *see also Causeway*, 2021 WL 486917, at *5-6, *5 n.6 (noting that insurance policies often contain anti-concurrent clauses, however, the lack thereof simply means that the court will apply an efficient proximate cause analysis). In that connection, where a virus exclusion lacks an anti-concurrent clause, there is no presumption that the virus exclusion does not apply to a plaintiff's claim for coverage. *See Causeway*, 2021 WL 486917, at *5-6, *5 n.6. Rather, courts apply an efficient proximate cause analysis. *Id.*

Plaintiff, however, attempts to circumvent application of the Virus Exclusion by arguing that "decisions for insureds without anti-concurrent cause clauses have become infected with decisions applying virus exclusions with anti-concurrent cause clauses." (Pl.'s Opp. at 2.) For example, Plaintiff argues that *Causeway* was wrongly decided because, in concluding that COVID-19 was the predominate cause of loss there, I relied on cases that failed to distinguish

between insurance policies that contain anti-concurrent clauses and those that do not. (*See id.* at 8–9.) In that connection, Plaintiff contends that because *Causeway* and other COVID-19 coverage decisions apparently fail to make this distinction, they create "the myth that if a business interruption policy contains a virus exclusion, *any* COVID-19 related claim is barred, no questions asked." (Pl.'s Opp., at 10.) I disagree. In *Causeway*, I conducted an efficient proximate cause analysis to determine whether the losses incurred by plaintiffs as a result of the suspension of their business operations were caused by the COVID-19 virus or by the Closure Orders. 2021 WL 486917, at *6. It is of no moment that, in conducting that analysis, I relied on certain cases that did not distinguish between virus exclusions with anti-concurrent clauses and those without because, the fact remains that the Closure Orders and the COVID-19 virus "are so inextricably connected that it is undeniable that the Orders were issued because of the virus." *Id.* Indeed, as I explained in *Causeway*, "[t]he virus and the orders are not two equal independent concurrent causes that worked together to cause the loss. The orders are wholly dependent on the virus." *Id.* (quoting *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, No. 20-1416, 2021 WL 22314, at *8 (M.D. Fl. Jan. 4, 2021)).

Accordingly, I am not persuaded by Plaintiff's attempts to distinguish *Causeway*. As I explained above, the COVID-19 virus is the proximate cause of Plaintiff's losses here, not the Closure Orders. That analysis does not change merely because the Virus Exclusion lacks an anti-concurrent clause. Plaintiff cannot escape the conclusion that the Closure Orders were issued in response to the COVID-19 virus. Put differently, without the COVID-19 virus, the State would not have issued their Orders. Plaintiff acknowledges as much in its Complaint, which alleges that

> [M]any state government administrations across the nation recognized the need to take steps to protect the health and safety of their residents from the human to human and surface to human spread of COVID-19. As a result, many governmental entities

>entered civil authority orders suspending or severely curtailing
>business operations of nonessential businesses that interact with the
>public and provide gathering places for individuals.

(Compl. ¶ 3.) Additionally, Plaintiff alleges that "because [the CDC's] recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing many business establishments". (Compl. ¶ 31.) In Plaintiff's own words, these statements further demonstrate that the predominant and proximate cause of Plaintiff's losses was the COVID-19 virus. Accordingly, because the Court finds that the COVID-19 virus was the proximate cause of Plaintiff's losses, and not the Closure Orders, I find that the Virus Exclusion completely bars coverage for Plaintiff's losses.[4]

## IV. CONCLUSION

For the reasons set forth above, Citizens' Motion for Judgment on the Pleadings is **GRANTED,** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Opinion.

DATED: July 14, 2021                              /s/ Freda L. Wolfson
                                                  Freda L. Wolfson
                                                  U.S. Chief District Judge

---

[4] Because Plaintiff has failed to state a claim against Citizens, it is appropriate to dismiss the class claims against Citizens, as well. *See Reilly v. Ne. Revenue Servs., LLC*, No. 12-02312, 2013 WL 3974181, at *1 n.1 (M.D. Pa. Aug. 1, 2013) (granting a dispositive motion prior to class certification) (collecting cases).